**Robert A. BERLACHER, Plaintiff,**

v.

**PAINEWEBBER INCORPORATED, Defendant.**

**PAINEWEBBER INCORPORATED, Plaintiff,**

v.

**Robert A. BERLACHER, Defendant.**

**Civ. A. Nos. 90–1689, 90–2188.**

United States District Court, District of Columbia.

Feb. 15, 1991.

John W. Scott, Drinker Biddle & Reath, Washington, D.C., Thomas J. Leach, Karl L. Prior, Drinker Biddle & Reath, Philadelphia, Pa., for Berlacher.

Mahlon M. Frankhauser, Linda M. Gardner, Lord Day & Lord, Barret Smith, Washington, D.C., for PaineWebber.

## MEMORANDUM AND OPINION

REVERCOMB, District Judge.

On January 19, 1988, PaineWebber hired Mr. Robert Berlacher as an investment executive in its Washington, D.C. office. Upon joining PaineWebber, Mr. Berlacher executed a Form U–4—the Uniform Application For Securities Industry Registration Or Transfer—in which he agreed to arbitrate any claim or controversy that might arise between him and PaineWebber. On February 25, 1988, Berlacher and PaineWebber entered into an Advanced Compensation Agreement ("ACA"), or signing bonus, of $634,352, structured as a three-year promissory note in which PaineWebber agreed to forgive one-third of the note annually for each of the first three years Berlacher remained employed with PaineWebber. In a letter explaining the terms of employment, PaineWebber promised Berlacher commissions on any trades he performed while at PaineWebber. On January 24, 1989, Berlacher executed another Promissory Note in favor of PaineWebber in the principal sum of $37,452.10 plus interest at the rate of ten percent. This note did not contain provisions permitting forgiveness by PaineWebber of the amount due.

On February 23, 1989, PaineWebber terminated the employment of Berlacher and demanded repayment of the entire ACA. Berlacher declined to repay the ACA on the ground that his termination was unlawful because PaineWebber lacked just cause. PaineWebber requested an NASD hearing,

and Berlacher counterclaimed that he had been denied the right to engage in transactions and that PaineWebber had miscredited commissions he had earned.

Before the arbitration began, the chairman of the arbitration panel agreed to allow the parties to file post-hearing legal memoranda to summarize the legal issues of the case and counsel for PaineWebber agreed to provide Berlacher with trade tickets for three Oppenheimer Management accounts, which Berlacher claims he needed to prove his counterclaim for lost commissions. However, at the end of the hearings, the arbitrators decided not to accept legal memorandum. In addition, PaineWebber failed to provide Berlacher with some of the necessary trade tickets and the panel ruled that Berlacher was not entitled to them.

PaineWebber began its case on March 7, 1990 and completed presentation of its claim on April 17–18, 1990. The arbitrators received these transcripts. Berlacher was to put on his case at the May 21 and 22 hearings. Ten days before these hearings, Berlacher's eight-year-old daughter broke her arm and required hospitalization in Pennsylvania. Because Berlacher needed to make medical decisions regarding his daughter and to help tend to his four other children, on May 14, he requested postponement of the May 21–22 hearing. Although PaineWebber initially opposed the request, it eventually agreed to the postponement. However, on May 17, the arbitrators denied Berlacher's request, and the hearing was held on May 21–22. Berlacher contended that he had inadequate opportunity to prepare, but proceeded under protest. The arbitrators issued an award of over $350,000 against Berlacher before the last two days of transcripts were received by the panel.

Berlacher originally brought this action to vacate the arbitration award. Painewebber subsequently brought an action for an order confirming the arbitration award, directing entry of judgment on the arbitration award in its favor, and enforcing the judgment entered on the arbitration award.

The parties have filed cross motions for summary judgment. Berlacher claims that the arbitration should be vacated because the arbitrators prejudged the case in favor of PaineWebber before Berlacher presented his defense and counterclaim. Berlacher raises four issues to evidence the arbitrator's misconduct: 1) the panel's refusal to grant a postponement that had been agreed to by both parties; 2) the panel's refusal to require PaineWebber to produce documents essential to the counterclaim; 3) the panel's hasty deliberation without allowing the filing of briefs that the parties and the panel agreed would be filed; and 4) the panel's deliberations without the benefit of the transcripts of Berlacher's case. PaineWebber contends that the rulings of the arbitrators do not constitute grounds to vacate the award.

Upon consideration of PaineWebber's Motion for Summary Judgment, Berlacher's Opposition and Cross–Motion for Summary Judgment, PaineWebber's Reply, Berlacher's Reply, and oral argument, it is

ORDERED that Berlacher's Motion for Summary Judgment is DENIED and PaineWebber's Motion for Summary Judgment is GRANTED.

■ The Federal Arbitration Act requires a district court to vacate an arbitration award

> [w]here the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced. 9 U.S.C. § 10(c) (1925).

In passing the Act, congress intended "to relieve congestion in the courts and to provide parties with an alternative method for dispute resolution that would be speedier and less costly than litigation." *Ultracashmere House, Ltd. v. Meyer*, 664 F.2d 1176, 1179 (11th Cir.1981). Accordingly, judicial review of an arbitration award has been narrowly limited. *Fairchild & Co. Inc. v. Richmond, F. & P.R. Co.*, 516 F.Supp. 1305 (D.D.C.1981).

**24**

The thrust of Berlacher's argument is that the arbitrators' conduct in refusing to postpone the May 21 hearing and/or the arbitrators' conduct in its entirety constitutes misconduct requiring the Court to vacate the award under the Act. However, because arbitrators are given a great deal of latitude in conducting arbitration proceedings, and based upon the record, the Court cannot find that the arbitrators' conduct constituted misconduct nor can the Court find on this record that there was even an abuse of discretion by the arbitrators.

*Postponing the Hearing*

■ Berlacher argues that the arbitrators' refusal to postpone the May 21–22 hearings upon sufficient cause shown constituted misconduct and prejudiced his rights because he was unable to prepare his case.

"Arbitrators are to be accorded a degree of discretion in exercising their judgment with respect to a requested postponement. Therefore, assuming there exists a reasonable basis for the arbitrators' considered decision not to grant a postponement, the Court will be reluctant to interfere with the award on these grounds." *Fairchild & Co. Inc. v. Richmond, F. & P.R. Co.*, 516 F.Supp. 1305, 1314–1315 (D.D.C.1981). In this case, the arbitrators had a reasonable basis for denying Berlacher's request for a postponement. Throughout the proceeding, there had been problems in coordinating the schedule of all the parties, counsel and the arbitrators. The injury was never presented as a life-threatening situation, nor were any medical complications arising from the injury asserted. In addition, Berlacher knew about the claim months before the hearing and had ample time to prepare his case. Based upon this record, the arbitrators were not guilty of misconduct.

*Discovery issues*

■ Berlacher argues that the arbitrators refused to hear evidence relevant to the controversy when they refused to enforce a discovery agreement between the parties that Berlacher claims was essential to his counterclaim. However, the arbitrators are charged with the responsibility for determining what evidence is relevant and that the arbitrators entertained extensive argument from both parties relating to the production of the discovery, following which they went into executive session to determine whether production was required. After careful consideration of the dispute, the arbitrators, in the appropriate exercise of their discretion ruled that PaineWebber was not required to produce the confidential and proprietary records in question and that Berlacher was not prejudiced by not having access to the discovery.

*Legal Memorandum and Transcripts*

■ Before arbitration, the chairman agreed to allow the parties to submit post-hearing legal memoranda on the legal and factual issues presented. On the final day of arbitration, the panel decided not to allow such memoranda, and Berlacher argues that he was prejudiced by this decision. However, the record is clear that the arbitrators fairly determined that they could rely on the extensive record of the proceedings as well as extensive factual and legal oral argument by counsel for both parties.

Berlacher argues that the arbitrators received only the transcripts of the hearings at which PaineWebber presented its case, and they reached their decision before receiving the transcripts of the hearings at which Berlacher presented his defense and counterclaim. However, the arbitrators were not required to read any of the transcripts and they properly used their discretion in reaching an opinion based on the testimony they had heard.

Based upon the record, the conduct of which Berlacher complains, viewed in its entirety, does not constitute misconduct on the part of the arbitrators.