**STATE of Alaska, Appellant,**

**v.**

**ALASKA PUBLIC EMPLOYEES
ASSOCIATION, AFT, AFL–CIO;**
Steve Baseden, Appellees.

No. S–12752.

Supreme Court of Alaska.

Dec. 19, 2008.

William E. Milks, Assistant Attorney General, Talis J. Colberg, Attorney General, Juneau, for Appellant.

Sarah E. Josephson, Jermain, Dunnagan & Owens, Anchorage, for Appellee Alaska Public Employees Association, AFT, AFL–CIO.

Steven T. Baseden, Juneau, pro se.

Before: MATTHEWS, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

MATTHEWS, Justice.

**Facts and Proceedings[1]**

Steve Baseden was terminated from state employment. The Alaska Public Employees Association (APEA) filed a grievance under the collective bargaining agreement (CBA) between APEA and the State challenging Baseden's termination. The grievance was submitted to binding arbitration. By the time of the hearing, the State had conceded that Baseden's termination was without just cause and had offered him reinstatement. The arbitrator awarded back pay from the termination date, April 14, 2000, to the effective date of the reinstatement offer, October 15, 2001. Baseden's other employment earn-

ings during this period were to be deducted from the award. Interest was required to be paid on the net award. The arbitrator assessed costs and fees against the State.

The State filed a complaint in superior court challenging, among other things, the arbitrator's award of interest. After briefs were submitted the superior court confirmed the arbitrator's award, including the award of interest. The State appeals only the superior court's confirmation of the interest award.

**Standard of Review**

■■■■ We review the superior court's decision confirming the arbitrator's award de novo.[2] An arbitrator's decision is accorded great deference.[3] "Both the common law and Alaska statutes 'evince a strong public policy in favor of arbitration.'"[4] To effectuate this public policy "we have followed a policy of minimal court interference with arbitration."[5] This deference extends to both the arbitrator's factual findings and the arbitrator's interpretation and application of the law.[6]

■■■ "Where one party alleges that the arbitrator has exceeded his or her authority, we will affirm the arbitrator's conclusion as to the scope of his or her powers if 'the arbitrator's conclusion is reasonably possible.'"[7] The standard of review of grievance arbitration arising out of labor management contracts mandated by the Public Employment Relations Act[8] (PERA) that are not subject to either of the Uniform Arbitration Acts[9] is "gross error."[10] "Gross error" en-

1. A more detailed review of the facts and proceedings in this case is set out in *Baseden v. State*, 174 P.3d 233, 235–37 (Alaska 2008).

2. *Id.* at 237.

3. *Alaska State Employees Ass'n/AFSCME Local 52 v. State*, 74 P.3d 881, 882 (Alaska 2003).

4. *Baseden*, 174 P.3d at 237 (quoting *Dep't of Pub. Safety v. Pub. Safety Employees Ass'n*, 732 P.2d 1090, 1093 (Alaska 1987)).

5. *Pub. Safety Employees Ass'n*, 732 P.2d at 1093 (quoting *City of Fairbanks Mun. Utils. Sys. v. Lees*, 705 P.2d 457, 460 (Alaska 1985)) (quotation marks omitted).

6. *OK Lumber Co. v. Alaska R.R. Corp.*, 123 P.3d 1076, 1078 (Alaska 2005) (citing *Ahtna, Inc. v. Ebasco Constructors, Inc.*, 894 P.2d 657, 660 (Alaska 1995)).

7. *Kinn v. Alaska Sales & Serv., Inc.*, 144 P.3d 474, 482–83 (Alaska 2006) (quoting *Marathon Oil Co. v. ARCO Alaska, Inc.*, 972 P.2d 595, 600 (Alaska 1999)).

8. AS 23.40.070–.260.

9. AS 09.43.010–.180; AS 09.43.300–.595.

10. *Pub. Safety Employees Ass'n, Local 92 v. State (PSEA )*, 895 P.2d 980, 984 (Alaska 1995). In our first decision in this case, *Baseden*, 174 P.3d

compasses only mistakes that are both obvious and significant.[11]

## The Arbitrator's Award of Prejudgment Interest Was Not Gross Error.

■ This appeal involves an intersection of competing legal doctrines. In the context of other damages claims, we have held that prejudgment interest can only be awarded against the state when the state expressly consents by statute. But we have also consistently articulated a deferential standard of review for an arbitrator's decision, recognizing that the arbitrator can determine the scope of issues presented and the availability of relief.

The State urges a strict application of the express legislative waiver rule for sovereign immunity that we have articulated in *Hawken Northwest, Inc. v. State, Department of Administration*,[12] *Quality Asphalt Paving, Inc. v. State, Department of Transportation & Public Facilities*,[13] *Samissa Anchorage, Inc. v. Department of Health & Social Services*,[14] and *Danco Exploration, Inc. v. State, Department of Natural Resources*.[15] The rule, as expressed in *Hawken Northwest*, is that "prejudgment interest may not be assessed against the state unless specifically authorized by legislation." [16]

■ The arbitrator did not address sovereign immunity when he awarded interest. Interest was first requested in the arbitration proceeding by APEA in its post-hearing brief. The State seems never to have mentioned interest, and neither party mentioned sovereign immunity in the arbitration proceedings. Arguably, the State waived its right to contest the award of interest on sovereign immunity grounds on appeal. But because there is authority that the sovereign immunity defense is not necessarily waived by failure to raise it in initial proceedings,[17] we decide this case on the merits. This makes resolution of the question of the waivability of sovereign immunity unnecessary. In deciding the merits, we assume that the arbitrator decided that sovereign immunity did not bar the award of interest and ask whether such a decision was gross error.

In support of the arbitrator's award of interest, a number of observations may be made.

■ Strictly applying the express legislative waiver rule in cases involving arbitration under PERA could lead to a result that even the State does not seek. While PERA mandates binding arbitration, it does not in so many words waive sovereign immunity as to either damages or interest on damages.[18]

at 238, we echoed a suggestion made in two earlier cases, *Alaska State Employees Ass'n/ AFSCME Local 52*, 74 P.3d at 882–83, and *University of Alaska v. Alaska Community Colleges' Federation of Teachers, Local 2404*, 64 P.3d 823, 826 (Alaska 2003), to the effect that it was an open question whether the gross error standard or the "arbitrary and capricious" standard, which is said to be more searching—that is, less deferential to an arbitrator's decision—should be employed. These cases seem to be based on the view that our statement in *PSEA* to the effect that gross error governs grievance arbitration disputes was dictum. While this view is correct, we take this opportunity to confirm the dictum in *PSEA* because it is consistent with the standard we employ for labor management grievance arbitration mandated by contracts that are not governed by PERA, and we see no reason why a different standard should be used in grievance arbitration governed by PERA. *See Nizinski v. Golden Valley Elec. Ass'n*, 509 P.2d 280, 283 (Alaska 1973).

11. *PSEA*, 895 P.2d at 984.

12. 76 P.3d 371, 382–83 (Alaska 2003).

13. 71 P.3d 865, 880 (Alaska 2003).

14. 57 P.3d 676, 680–81 (Alaska 2002).

15. 924 P.2d 432, 434 (Alaska 1996).

16. *Hawken Nw.*, 76 P.3d at 382.

17. *See, e.g., State v. Haley*, 687 P.2d 305, 318 n. 11 (Alaska 1984) (rejecting the argument the State waived its legislative immunity argument by not asserting it in the proceedings below and stating, "the failure to raise this defense at trial does not necessarily constitute a waiver of immunity" (citing *Sup.Ct. of Va. v. Consumers Union*, 446 U.S. 719, 730 n. 9, 100 S.Ct. 1967, 64 L.Ed.2d 641 (1980))).

18. *See* AS 23.40.210(a). We note that arbitration under PERA is not generally subject to Alaska's Uniform Arbitration Act or Alaska's Revised Uniform Arbitration Act unless one of the uniform acts is expressly incorporated in the CBA. AS 09.43.010(a); AS 09.43.300(c)-(d). The CBA does not incorporate either act by its terms.

But it is clear that the legislature has waived at least some sovereign immunity by requiring binding arbitration of grievances.[19] Thus it was the arbitrator's duty, at least initially, to determine the scope of the State's waiver of immunity.

In making this determination the arbitrator could reasonably have relied on our decision in *Native Village of Eyak v. GC Contractors*.[20] In that case an Indian tribe had entered into a construction contract containing an arbitration clause.[21] The tribe contended that the arbitration clause was not an effective waiver of its sovereign immunity from suit.[22] This court recognized the doctrine that a tribe's waiver of sovereign immunity "cannot be implied but must be unequivocally expressed"[23] and held that the arbitration clause was necessarily an unequivocal expression of waiver of immunity.[24] Although the arbitration clause itself said nothing about sovereign immunity, we observed:

> [I]t is clear that any dispute arising from a contract cannot be resolved by arbitration, as specified in the contract, if one of the parties intends to assert the defense of sovereign immunity. To the extent possible, all provisions in a contract should be found meaningful. The arbitration clause in Eyak's contract with GC Contractors would be meaningless if it did not consti-

tute a waiver of whatever immunity Eyak possessed.[25]

We therefore concluded that a waiver of sovereign immunity was effected by the arbitration clause: "Accordingly, we hold that Eyak waived whatever immunity from suit it possessed by entering into a contract with GC Contractors containing an agreement that any disputes arising under the contract would be resolved by arbitration."[26]

None of the precedents that the State relies on involved an appeal from an arbitrator's award. *Hawken Northwest* and *Quality Asphalt Paving* involved appeals from administrative resolutions of contract claims under the procurement code.[27] *Samissa Anchorage* involved an administrative challenge to Medicaid reimbursement rates.[28] *Danco Exploration* involved an administrative decision to deem an oil and gas lease forfeited.[29] The standard of review that we employed in these cases is less deferential than the gross error standard we use here.[30]

Further, the rule requiring a legislative waiver of sovereign immunity that expressly mentions interest has become something of an anachronism. In 2001 the legislature added a section to the state procurement code that permits prejudgment interest awards in claims filed with an agency after the effective date of the act.[31] Although the scope of the

---

**19.** As APEA notes, the State does not claim sovereign immunity from all damages awarded.

**20.** 658 P.2d 756 (Alaska 1983).

**21.** *Id.* at 757.

**22.** *Id.* at 760.

**23.** *Id.* (quoting *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978)).

**24.** *Id.* at 760–61.

**25.** *Id.* at 760 (citations omitted).

**26.** *Id.* at 761.

**27.** *Hawken Nw., Inc. v. State, Dep't of Admin.*, 76 P.3d 371, 376, 382 (Alaska 2003); *Quality Asphalt Paving, Inc. v. State, Dep't of Transp. & Pub. Facilities*, 71 P.3d 865, 879–80 (Alaska 2003).

**28.** *Samissa Anchorage, Inc. v. Dep't of Health & Soc. Servs.*, 57 P.3d 676, 679–81 (Alaska 2002).

**29.** *Danco Exploration, Inc. v. State, Dep't of Natural Res.*, 924 P.2d 432, 433–34 (Alaska 1996).

**30.** *See, e.g., Hawken Nw.*, 76 P.3d at 376, 382–83 (applying de novo review because the question of law did not involve agency expertise); *Samissa Anchorage*, 57 P.3d at 678 (applying the substitution of judgment test because no agency expertise was involved).

**31.** AS 36.30.623 provides:

> The amount ultimately determined to be due under AS 36.30.620–36.30.630 and 36.30.670–36.30.685 to a department contractor, the department, or a contracting agency to whom the responsibility for handling the claims is delegated by the department under AS 36.30.632 accrues interest at the rate applicable to judgments under AS 09.30.070(a). Notwithstanding AS 09.30.070(b), the interest accrues from the date that a complete claim is filed that meets the requirements of AS 36.30.620(a) through the date of a decision by the procurement officer under AS 36.30.620, a decision by the commissioner of transportation and public

new section is ambiguous,[32] it reflects at least to some degree a legislative concurrence with the proposition that prejudgment interest should be paid by the State on duly established compensatory damage claims.[33]

Finding a waiver of sovereign immunity as in *Eyak* would not necessarily resolve the issue of the scope of that waiver. Here the waiver could reasonably encompass prejudgment interest. The State has consented explicitly in AS 09.50.280 to prejudgment interest awards for contract claims that may be brought against the State in the superior court. If arbitration is to achieve its promise as a fair, just, and expeditious means of resolving disputes, the normal prejudgment interest award that would be available in court should also be available in arbitration.[34]

Moreover, we recently held that an arbitrator's award in a dispute arising under a collective bargaining agreement governed by PERA will bear interest between the date of the arbitral award and the date of the superior court's confirmation of the award.[35] It would seem strange to conclude that the State's waiver of immunity allows a party to be made whole with respect to prejudgment interest accruing between an award and its confirmation but not for the pre-award period.

This case presented a close question as to which of two principles should be applied to determine when and to what extent sovereign immunity has been waived. One principle requires express legislative waiver of sovereign immunity to award pre-judgment interest against the State. The other principle, potentially derivable from *Eyak*, is that the State's consent to arbitration amounts to an express waiver of sovereign immunity to the extent needed to make a claimant whole by awarding prejudgment interest. Considering the closeness of this question, the policy favoring effective arbitration, and the fairness of awarding interest, we are unable to conclude that the arbitrator's decision to award prejudgment interest against the State was gross error.

## Conclusion

The decision of the superior court confirming the arbitrator's award of prejudgment interest is AFFIRMED.

FABE, Chief Justice, not participating.

---

facilities under AS 36.30.680, or a judicial decision under AS 36.30.685, whichever decision is latest. In this section, "department" means the Department of Transportation and Public Facilities.

**32.** In *Hawken Northwest* we observed that although the newly added section defined "department" to mean the Department of Transportation and Public Facilities, we assumed for discussion purposes that the provision would apply to claims filed against other agencies. 76 P.3d at 383 n. 40. The state procurement code itself broadly applies to the procurement of supplies, services, and professional services by state agencies and instrumentalities. *See* AS 36.30.005–.030.

**33.** The arbitrator in this case relied on a similar rationale:

In virtually all other forums—courts and administrative agencies—a prevailing party routinely receives interest on delayed payments. That is a matter of simple justice; getting a sum a year late does not make the recipient whole. Interest is the normal way to compensate the injured party for delayed payment. Interest awards are relatively unusual in labor arbitration, apparently only because parties seldom seek them.

(Quoting *Atl. Se. Airlines*, 101 Lab. Arb. 515, 525, 1993 WL 515531 (1993) (Nolan, Arb.).) The arbitrator considered whether to award interest to be "a matter for arbitral discretion."

**34.** *See Gilbert v. Sperbeck*, 126 P.3d 1057, 1060 (Alaska 2005) (noting that arbitration proceedings should be "fair and just" and that Alaska policy favors arbitration).

**35.** *State v. Alaska State Employees Ass'n*, 190 P.3d 720 (Alaska 2008). In *Alaska State Employees Ass'n* we noted that only an arbitrator can award interest for the pre-arbitration award time period, but in so noting we did not purport to resolve the issues presented in this case. *Id.* at 725 & n. 26 (citing *Ebasco Constructors, Inc. v. Ahtna, Inc.*, 932 P.2d 1312, 1317–18 (Alaska 1997)).